**FILED**

NOV 17 2005

ALLEN B. COYLE, CLERK

By _____
Deputy

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

| | |
|---|---|
| **RITA BENNETT, In Her Representative Capacity as Guardian of BETTY COGGINS** | **PLAINTIFF** |
| **VS.** | **CIVIL ACTION NO:** 1:05CV300-DD |
| **BEVERLY ENTERPRISES, INC., BEVERLY HEALTH AND REHABILITATION SERVICES, INC., BEVERLY HEALTHCARE, INC., BEVERLY ENTERPRISES MISSISSIPPI, INC., and JOHN AND JANE DOES 1-10** | **DEFENDANTS** |

---

## COMPLAINT

### JURY TRIAL DEMANDED

The Plaintiff, Rita Bennett, in her representative capacity as guardian of her mother, Betty Coggins, files this Complaint against Defendants, Beverly Enterprises, Inc., Beverly Health and Rehabilitation Services, Inc., Beverly Healthcare, Inc., Beverly Enterprises Mississippi, Inc. and John and Jane Does 1-10 (collectively "Beverly Defendants"), as follows:

### I.    INTRODUCTION

1.    This is a Complaint for nursing home abuse and neglect, negligence, gross negligence, reckless disregard for the safety of Betty Coggins and other nursing home residents, failure to supervise, breach of contract, fraudulent concealment and deceit, and for recovery of monetary damages for personal injuries sustained by Betty Coggins as a result of the Beverly Defendants.

### II.    PARTIES

2.    Plaintiff, Rita Bennett, is an adult resident citizen of Lee County, Mississippi. Ms. Bennett is the guardian of her elderly mother, Betty Coggins.

3.      Defendant Beverly Enterprises, Inc. ("BEI") is a California corporation with its principal place of business located in Arkansas. BEI may be served with process by serving its registered agent, The C.T. Corporation System located at 631 Lakeland East Drive, Flowood, Mississippi, 39208.

4.      Defendant, Beverly Health and Rehabilitation Services, Inc. ("BHRS") is a non-resident corporation with its principal place of business located in Arkansas. BHRS may be served with process by serving its registered agent, CSC PF Rankin County, Inc. located at Mirror Lake Plaza, 2829 Lakeland Drive, Suite 1502, Flowood, Mississippi 39232.

5.      Defendant, Beverly Healthcare, Inc. ("BH") is a non-resident corporation with its principal place of business located in Arkansas. BH may be served with process by serving its registered agent, CSC PF Rankin County, Inc. located at Mirror Lake Plaza, 2829 Lakeland Drive, Suite 1502, Flowood, Mississippi 39232.

6.      Defendant Beverly Enterprises Mississippi, Inc. ("BEM") is a California corporation with is principal place of business located in Arkansas. BEM may be served with process by serving its registered agent, CSC PF Rankin County, Inc. located at Mirror Lake Plaza, 2829 Lakeland Drive, Suite 1502, Flowood, Mississippi, 39232.

7.      John and Jane Does 1-10 are unidentified nursing home administrators, directors of nursing, nurses, certified nursing assistants, executives, and other employees or agents of the Beverly Defendants who abused or neglected Betty Coggins, are legally responsible for the abuse and neglect of Betty Coggins under Mississippi law, and/or are responsible for the policies, procedures, and conduct that caused the abuse and neglect of Betty Coggins.

### III.    JURISDICTION AND VENUE

8.    This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332, since the matter in controversy exceeds $75,000.00 and is between citizens of different states.

9.    Venue is proper in the Eastern Division since the abuse and neglect of Betty Coggins occurred in Tupelo, Mississippi.

### IV.    ATTORNEY CERTIFICATE

10.    Pursuant to Mississippi Code Annotated § 11-1-58(4), the undersigned counsel has requested Betty Coggins' records from the Beverly Defendants, but the records have not been produced. The Plaintiff will file a certificate of consultation with an expert witness within ninety (90) days after the records have been produced. The undersigned has concluded on the basis of his own investigation that there is a reasonable basis for the commencement of this action.

11.    On September 16, 2005, Plaintiff delivered her Notice of Claim by certified mail to David R. Devereaux, One Thousand Beverly Way, Fort Smith, Arkansas pursuant to Mississippi Code Annotated § 15-1-36, which requires that sixty (60) days notice of intent to file suit be given.[1] The Defendants did not respond to the Notice of Claim.

### V.    FACTS

### A.    THE BEVERLY DEFENDANTS

12.    BEI is one of the largest operators of long term care facilities in the nation. BEI is headquartered in Fort Smith, Arkansas. The chief executive officer of BEI is paid

---

[1] See Exhibit "A", a copy of the Notice of Claim letter and return receipts.

over $2 million annually and owns over $10 million worth of stock in the company. Other BEI executives are paid in excess of $700,000.00 annually and own company stock worth millions of dollars.

13.     BEI operates nursing homes through its wholly owned subsidiaries and affiliates.

14.     BEI also owns and operates a wholly-owned subsidiary called Aegis that provides physical therapy to residents of Beverly Healthcare nursing homes who are eligible for Medicare reimbursement.   Aegis performs almost no therapy on non-Medicare eligible residents of Beverly nursing homes because BEI has determined that it would not generate sufficient profits.

15.     Beverly Healthcare or Beverly Health and Rehabilitation Services operate nursing homes in Mississippi through its wholly-owned subsidiary BEM.  BEM currently operates at least nine (9) nursing homes in Mississippi, including, Beverly Healthcare Tupelo.

16.     All BEM nursing homes, including Beverly Healthcare Tupelo, are operated in accordance with detailed budgets issued by BEI.   The budgets dictate permissible expenditures in all areas of operation including direct hands-on nursing care of residents.

17.     Budgets for individual nursing homes flow down the corporate chain from BEI to the individual facilities.  As a result, the budgets do not factor in the individual needs of residents at a particular facility such as Beverly Healthcare Tupelo.

18.     The personnel in charge of resident health at Beverly nursing homes are the Directors of Nursing.  BEI does not consult with Directors of Nursing at individual

4

facilities before issuing budgets and Directors of Nursing have no input in the amount budgeted for nursing staffing.

19.     BEI defends its budgeting process with respect to staffing levels by allowing individual nursing home Administrators and Directors of Nursing to request additional staff. However, BEI discourages such requests and has implemented a bonus policy that encourages facilities to understaff nursing care and not request additional staff, as discussed in Section C below.

### B.     BEVERLY AND UNDERSTAFFING

20.     Costs associated with paying employees are the largest expenses in operating a nursing home. In addition, the nursing staff – including nursing assistants – represents the majority of all staff within a nursing home.

21.     Federal regulations require nursing homes to provide sufficient staffing to meet the needs of residents.

22.     Mississippi state regulations require nursing homes to provide a minimum of 2.8 hours of direct hands-on nursing care per patient per day.

23.     Together, both state and federal regulations require a minimum of 2.8 hours of hands-on nursing care per patient per day or whatever greater amount is actually necessary to meet the needs of residents in a nursing home facility.

24.     The Beverly Defendants intentionally and systematically fails to provide adequate staffing in its nursing home facilities in order to lower labor expenses and maximize corporate profits.

25.     The Beverly Defendants understaff their facilities despite the fact that employees in the facilities regularly complain about understaffing and request that additional staff be provided.

26.     Understaffing in Beverly nursing home facilities directly causes residents to be abused, neglected, and provided with inadequate care.

### C.     BEVERLY'S BONUS PROGRAM

27.     The Beverly Defendants have implemented and maintain a bonus program tracked by a document known as the "Beverly Scorecard".

28.     Under the Beverly bonus program as tracked by the Beverly Scorecard, the individual facility Administrators and Directors of Nursing are eligible for bonuses. The bonus program awards bonuses to Administrators and Directors of Nursing whose facilities meet the budget. Further, the bonus program contains a scale so that the more a facility undercuts its budget the greater the Administrator and Director of Nursing's bonuses are.

29.     The bonus program also contains a component that implicitly discourages Administrators and Directors of Nursing from reporting accidents, injuries, pressure sores, and other resident conditions usually caused by inadequate care. Inclusion of this component in the bonus program makes it less likely that reportable violations are disclosed to federal and state authorities.

30.     Beverly self labels the Beverly Scorecards as "quality assurance" documents that are not subject to production to residents or families of residents of Beverly facilities. As a result, the Beverly bonus program is kept secret.

### D.     THE BEVERLY CORPORATE INTEGRITY AGREEMENT

31.     Over the course of many years, BEI and its subsidiaries defrauded millions of dollars from the federal government by submitting false Medicare claims.

32.     As a result, in 2000 BEI settled a Medicare fraud case with the United States Department of Justice and agreed to pay a $175 million settlement and $5 million fine to resolve civil and criminal charges that it defrauded Medicare.

33.     As a part of BEI's settlement with the federal government, it entered into a Corporate Integrity Agreement with the office of the Inspector General of the United States Department of Health and Human Services to insure compliance by BEI and all of its subsidiaries, affiliates, officers, directors, and employees with the requirements of Medicare, Medicaid, and all other federal health care programs as defined in 42 U.S.C. § 1320A – 7b(f).[2]

34.     As part of the Corporate Integrity Agreement, the Beverly Defendants agreed to insure that its nursing homes complied with all federal regulations, including the regulations under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), 42 C.F.R. Parts 442 and 483.

35.     These OBRA regulations impose numerous requirements on the Beverly Defendants in their resident care including, but not limited to, requirements regarding the following:

    (a)     Reporting resident injuries of unknown origin to state authorities;

    (b)     Resident assessment and care planning;

    (c)     Nutrition;

    (d)     Diabetes and wound care;

---

[2] A copy of the BEI Corporate Integrity Agreement is attached as Exhibit "B".

(e)     Infection control;

(f)     Abuse and neglect policies and reporting procedures;

(g)     Staffing;

(h)     Appropriate drug therapies;

(i)     Appropriate mental health services;

(j)     Provision of basic care needs;

(k)     Incontinence care;

(l)     Resident rights and restraint use;

(m)    Activities of daily living ("ADL") care;

(n)     Therapy services;

(o)     Quality of life, including accommodation of needs and activities; and

(p)     Assessment of patient competence to make treatment decisions.

36.     When the Corporate Integrity Agreement was executed, current and future residents of Beverly facilities were third-party beneficiaries of the Corporate Integrity Agreement.

37.     The Corporate Integrity Agreement imposed a duty on BEI and all Beverly Defendants to comply with and insure compliance with all OBRA regulations with respect to Mrs. Coggins and other residents of all Beverly facilities.

38.     Effective April 19, 2004, the OIG and Beverly Defendants executed an amendment to the Beverly Corporate Integrity Agreement. Among other things the 2004 amendment requires the Beverly Defendants to:

        a.  Implement measures designed to ensure that facility staffing needs are
            decided "first and foremost" upon achieving the level of care for Beverly's

patients and residents required by federal and state laws, including, but not limited to, 42 CFR § 483.30;

b.  Implement measures designed to inform employees of the staffing requirements of federal and state laws; and

c.  Implement measures to inform employees that staffing levels are a critical aspect of patient and resident care and educating employees about where to report concerns about staffing.

39.     The 2004 Amendment also contained a provision that attempted to disclaim a private right of action based on a violation of the Corporate Integrity Agreement and stated that the residents of Beverly facilities were not intended or third-party beneficiaries of the Corporate Integrity Agreement.

40.     Residents of Beverly facilities, including the Plaintiff, are in fact intended and/or third-party beneficiaries of the Corporate Integrity Agreement. The provision that attempts to disclaim the status and rights of Beverly facility residents is unconscionable and void as against public policy.

### E.     BETTY COGGINS

41.     Betty Coggins is sixty-eight (68) years old. Mrs. Coggins is a widow and has three (3) adult children.

42.     In 1994 Mrs. Coggins suffered a stroke that left her partially paralyzed on her right side. Mrs. Coggins' stroke left her in a condition that required full time care and supervision. Mrs. Coggins three children were not in a position to provide constant care because they all worked full time. Mrs. Coggins children also could not afford private home care.

43.     As a result, Mrs. Coggins children had to place Mrs. Coggins in a nursing home and placed Mrs. Coggins in the Beverly Healthcare Tupelo nursing home ("the Facility") in 1994.

44.     During the entire time period that Mrs. Coggins was a resident of the Facility, a foul odor was constantly present.  The odor smelled like urine and feces. Plaintiff and Mrs. Coggins' other children did not know that it was not normal or acceptable for a nursing home to constantly smell like urine and feces.

45.     The constant foul odor in the Facility was caused by the systematic neglect of residents in the Facility by the Beverly Defendants and their employees and agents as a direct result of understaffing.  Beverly did not staff the Facility with enough nurses and certified nursing assistants to meet the residents' bowel and bladder needs.  As a result, incontinent residents who had urinated or defecated in a diaper were not cleaned or their diapers changed in a timely fashion.  The sullied linens and bed pads were also not cleaned and replaced in a timely fashion which further contributed to the foul odor of the Facility.

46.     In addition, many residents at the Facility were originally continent – meaning that they were able to use the toilet – but needed assistance in getting to and from the toilet.  Beverly's understaffing at the Facility resulted in there not being sufficient staff levels for the nursing assistants to be able to assist residents to and from the toilet.  As a result, residents became incontinent who otherwise would not have if not for the understaffing at the Facility.

47.     In 2004, conditions at the Facility that were bad to begin with significantly deteriorated causing harm to Mrs. Coggins.

## E.     BED SORES

48.     Pressure sores are a painful skin condition which can also be referred to as pressure ulcers and bed sores.   Pressure sores are often caused or made worse by individuals having to lie in urine and feces for unacceptable lengths of time and individuals not being turned often enough.

49.     As a result of the understaffing at the Facility, Mrs. Coggins was not kept cleaned and turned enough to prevent pressure sores.

50.     Mrs. Coggins developed painful pressure sores that required hospital treatment.   On one occasion, the emergency room doctor at the hospital treated Mrs. Coggins pressure sores, applied bandages, and dated the bandages.

51.     After Mrs. Coggins returned to the Facility from the hospital, her children repeatedly asked the Facility's nurses to change Mrs. Coggins' bandages daily pursuant to doctor's orders.

52.     Despite the doctor's orders and multiple requests by Mrs. Coggins' children, the Facility's nursing staff did not change her bandages for over a week.  After more than a week following the hospitalization, the bandages from the hospital had rotted into Mrs. Coggins' body with the date written by the hospital doctor still visible.

53.     The neglect that caused and exacerbated Mrs. Coggins' pressure sores constituted both neglect and abuse under Mississippi law and caused Mrs. Coggins to endure severe physical and mental pain and suffering.

## G.     SCABIES / LICE

54.     Scabies is a contagious skin disorder caused by a very small wingless insect that burrows into the skin and lays one to three eggs daily.  Scabies is a form of

11

lice. Scabies infestation can spread by skin to skin contact or by sharing of clothing, towels, and bedding. Scabies causes intense itching and is painful.

55.     Mrs. Coggins contracted a severe infestation of scabies in the Facility that was neglected by the nursing staff and was not treated or diagnosed for over one (1) month.

56.     Mrs. Coggins' scabies was diagnosed and treated only after repeated requests were made to the Beverly Defendants by Mrs. Coggins' children for a skin test.

57.     Mrs. Coggins endured severe physical pain and suffering and mental anguish as a result of the scabies and her condition was worse than it otherwise would have been because her paralysis prevented her from scratching when she itched. Mrs. Coggins was also permanently scarred from the scabies infestation.

### H.     **GENERAL NEGLECT AND ABUSE**

58.     The Beverly Defendants abused and neglected Mrs. Coggins by not bathing her on a regular basis and not keeping her clean.

59.     Employees at the Facility refused requests to bathe Mrs. Coggins on multiple occasions.

60.     Mrs. Coggins' nurses' aides at the Facility constantly complained to Mrs. Coggins' family members about the understaffed conditions at the Facility and blamed the understaffing as the reason that the staff did not regularly bathe Mrs. Coggins and keep her clean.

61.     Due to Mrs. Coggins' physical condition, she had to be hand fed in order to eat.

62.    During the last six (6) months of Mrs. Coggins' residency at the Facility, she lost sixty to seventy (60-70) pounds because the employees at the Facility did not feed her. The failure to feed Mrs. Coggins was caused by understaffing.

63.    Mrs. Coggins' weight loss was caused by at least two (2) factors: (1) the Facility ran out of food and medical supplies on at least one occasion and the food served was not nutritious; and (2) the Facility employees did not feed Mrs. Coggins.

64.    Beverly Defendants took actions to attempt to conceal the resident abuse and neglect taking place at the Facility. For instance, Defandants posted "no cameras" signs at the Facility in an attempt to prevent family members from documenting resident abuse and neglect.

65.    Despite Beverly Defendants' attempt to conceal resident abuse and neglect, Mrs. Coggins' family members photographed her bed sores, scabies, and other painful conditions caused by abuse and neglect.

66.    Beverly Defendants failed to properly care for Mrs. Coggins despite numerous complaints and requests from Mrs. Coggins' family members.

67.    Mrs. Coggins' family members complained to nurses, nursing directors, administrators, and managerial employees from BEI and/or Beverly Healthcare. One Beverly official from Arkansas who was visiting the Facility refused to view the photographs of Mrs. Coggins' condition and diverted his eyes away from the photographs when they were placed on a table in front of him.

68.    At the end of Mrs. Coggins' residency at the Facility, the neglect and abuse increased after Mrs. Coggins' family complained about the inadequate care she

was receiving. Facility personnel refused to feed and bathe Mrs. Coggins in retaliation for the complaints made by her family members.

69.    Mrs. Coggins' family also complained to the office of the Attorney General for the State of Mississippi.

## VI.    CLAIMS FOR RELIEF

### A.    NEGLECT

70.    As a resident of the facility, the Beverly Defendants owed Mrs. Coggins a duty to exercise reasonable care to prevent neglect of Mrs. Coggins while she was a resident of the Facility.

71.    Neglect includes the failure of a caretaker to supply a vulnerable adult with the food, clothing, shelter, healthcare, supervision, or other services that were necessary to maintain her mental and physical health.

72.    Beverly Defendants repeatedly neglected Mrs. Coggins in violation of Mississippi law.

73.    The Beverly Defendants' neglect of Mrs. Coggins caused her to suffer damages.

74.    The Beverly Defendants' neglect of Mrs. Coggins was willful or wanton conduct in reckless disregard of the safety of Mrs. Coggins and justifies an award of punitive damages against Beverly Defendants.

### B.    ABUSE

75.    As a resident of the Facility, the Beverly Defendants owed Mrs. Coggins a duty to exercise reasonable care to prevent the occurrence of and to protect Mrs. Coggins from abuse while she was resident in the Facility.

14

76.    Abuse includes the willful infliction of physical pain, injury, or mental anguish on a vulnerable adult, the unreasonable confinement of a vulnerable adult, or the willful deprivation by a caretaker of services that are necessary to maintain the mental and physical health of a vulnerable adult.

77.    Beverly Defendants abused Mrs. Coggins in violation of Mississippi law.

78.    The Beverly Defendants' abuse of Mrs. Coggins caused her to suffer damages.

79.    The Beverly Defendants' abuse of Mrs. Coggins was willful or wanton conduct in reckless disregard for the safety of Mrs. Coggins and justifies an award of punitive damages against Beverly Defendants.

### C.    BREACH OF CONTRACT – DIRECT CONTRACT CLAIM

80.    In connection with Mrs. Coggins' admittance to the facility and continued residency at the Facility, the Beverly Defendants agreed to provide her with good care that complied with all federal and state regulations and laws regarding operating a nursing home and the treatment of nursing home residents, including agreeing to adequately staff the Facility in order to meet the residents' needs.

81.    By repeatedly neglecting and abusing Mrs. Coggins, the Beverly Defendants breached their contract with Mrs. Coggins, her representatives, and any entities that reimbursed Beverly for caring for Mrs. Coggins, including, Medicare and Medicaid.

82.    Plaintiff should be awarded damages in an amount equal to all sums paid to the Beverly Defendants or any other BEI subsidiary for the care and treatment of Mrs. Coggins.

15

### D.  BREACH OF CONTRACT – THIRD PARTY AND INTENDED BENEFICIARY CLAIMS

83.  Mrs. Coggins was an intended and a third-party beneficiary of the Beverly Corporate Integrity Agreement.

84.  All Beverly Defendants breached their duty under the Corporate Integrity Agreement to provide care to Mrs. Coggins that complied with all applicable federal regulations including, 42 C. F. R. § 483.

85.  The care and treatment provided to Mrs. Coggins did not comply with federal regulations.

86.  The Beverly Defendants are liable to Mrs. Coggins in her capacity as a third-party beneficiary of the Corporate Integrity Agreement for actual and sustained damages as a result of the Facility's failure to comply with federal regulations in regard to her care.

87.  A judgment should be entered and damages assessed against all Beverly Defendants for breaching the Corporate Integrity Agreement in an amount sufficient to compensate Mrs. Coggins for her physical pain and suffering and mental anguish that resulted from Beverly Defendants' conduct.

88.  In addition, Beverly Defendants' breaches included conduct that was willful, wanton, or in reckless disregard for the safety of Mrs. Coggins and justifies an award of punitive damages.

### E.  FAILURE TO SUPERVISE

89.  The Beverly Defendants had a duty to supervise the employees at the Facility in a manner that assured that Mrs. Coggins was given adequate care and treatment and not neglected.

90.     The Beverly Defendants breached their duty to Mrs. Coggins by failing to properly and adequately educate, train, and supervise their personnel at the Facility who should have been providing care to Mrs. Coggins.

### F.     GROSS NEGLIGENCE

91.     The Beverly Defendants are liable for all negligent acts and omissions committed by their employees and agents who provided care or were supposed to provide care to Mrs. Coggins.

92.     Beverly Defendants' employees and agents were grossly negligent in their care of Mrs. Coggins.

93.     Beverly Defendants' employees and agents were also grossly negligent in failing to provide Mrs. Coggins with adequate care and treatment.

94.     The Beverly Defendants were grossly negligent with respect to Mrs. Coggins in the following respects:

(a)     Failure to inform Mrs. Coggins' family members and treating physicians of accidents, injuries, and/or significant changes in her condition;

(b)     Failure to investigate and properly resolve grievances reported by Mrs. Coggins' family members, including allegations of abuse and neglect;

(c)     Failure to keep Mrs. Coggins free from unreasonable chemical restraints;

(d)     Failure to develop and implement written policies and procedures that prohibit mistreatment, neglect, and abuse of residents;

(e)     Permitting Mrs. Coggins to be abused and neglected while in the Facility;

(f)     Failure to provide care to Mrs. Coggins in a manner and in an environment that maintained her dignity and self respect;

(g)     Failure to develop and implement a proper comprehensive care plan for Mrs. Coggins;

17

(h)   Failure to provide Mrs. Coggins with the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being in accordance with a comprehensive assessment and plan of care;

(i)   Failure to keep Mrs. Coggins clean and groomed;

(j)   Failure to take adequate measures to prevent or treat pressure sores;

(k)   Failure to provide adequate incontinence care;

(l)   Failure to prevent contractures;

(m)   Failure to prevent severe weight loss;

(n)   Failure to provide adequate nutrition;

(o)   Failure to provide adequate nursing care;

(p)   Failure to adequately staff the Facility;

(q)   Failure to adequately supervise the staff at the Facility;

(r)   Failure to establish and maintain an infection control program that provided a safe, sanitary, and comfortable environment and that prevented the development and transmission of disease and infection, including pressure sores and scabies / lice and;

(s)   Failure to provide adequate administration and management of the facility.

95.   Judgment should be entered against all Beverly Defendants and damages awarded to Plaintiff in an amount adequate to compensate Mrs. Coggins for her physical pain and suffering and mental anguish caused by the gross negligence of Beverly Defendants' employees and agents.

### G.   FRAUDULENT CONCEALMENT AND DECEIT

96.   The Beverly Defendants had a duty under federal and state regulations and the Corporate Integrity Agreement to report to federal and state authorities all violations

18

of federal and state regulations and the Corporate Integrity Agreement in the care and treatment of residents of its nursing home facilities.

97.    The Beverly Defendants committed multiple acts and omissions that violated federal and state regulations and the Corporate Integrity Agreement in their care and treatment of Mrs. Coggins and other residents at their nursing home facilities.

98.    The Beverly Defendants did not self-report any of their violations of federal and state regulations and the Corporate Integrity Agreement in treating Mrs. Coggins and other residents of their nursing home facilities.

99.    The Beverly Defendants' failure to self-report violations of federal and state regulations and the Corporate Integrity Agreement constitutes the torts of fraudulent concealment and deceit.

100.    The Beverly Defendants also take actions to conceal their poor resident care from state survey inspectors. This conduct prevents Beverly from being cited for inadequate care, prevents the violations in the standard of care from being discovered, and harms the residents including Mrs. Coggins.

101.    The Beverly Defendants knew while Mrs. Coggins was a resident of the Facility that the Facility was not staffed adequately to meet the needs of Mrs. Coggins and other residents. The Beverly Defendants intentionally concealed the fact that the Facility was inadequately staffed for the pecuniary benefit of Beverly Defendants in reckless disregard for the safety of Mrs. Coggins and other residents of the Facility.

102.    Actions by the Beverly Defendants to fraudulently conceal the understaffing at the Facility included maintaining multiple sets of employee work schedules including schedules listing former employees as being scheduled to work.

These actions were intended to trick state inspectors into concluding, based on the bogus schedules, that the Facility maintained staffing levels that complied with state and federal regulations.

103.    Mrs. Coggins suffered damages as a result of the Beverly Defendants' fraudulent concealment and deceit and judgment should be entered against the Beverly Defendants and Plaintiff awarded actual and punitive damages for the Beverly Defendants' fraudulent concealment and deceit.

### H.    CIVIL CONSPIRACY

104.    There existed a conspiracy among the Beverly Defendants and executives and officers of BEI, Beverly Healthcare, and other Beverly subsidiaries and affiliates to conceal understaffing, neglect, abuse, and other mistreatment of residents of Beverly nursing home facilities and its violations of federal and state regulations and the Corporate Integrity Agreement in providing care and treatment to residents of Beverly's nursing home facilities.

105.    The Beverly Defendants' civil conspiracy was motivated by corporate and individual greed.

106.    The Beverly Defendants committed multiple acts of fraud in furtherance of their civil conspiracy including failing to report violations of federal and state regulations and the Corporate Integrity Agreement.

107.    Mrs. Coggins suffered damages as a result of the Beverly Defendants' civil conspiracy and is entitled to an award of actual and punitive damages.

## VII.    RELIEF DEMANDED

108.    Plaintiff requests economic damages against Beverly Defendants in an amount equal to all sums collected by Beverly Defendants or any of their subsidiaries to provide care or treatment to Mrs. Coggins, with interest.

109.    Plaintiff requests damages for physical pain and suffering and mental anguish against Beverly Defendants in an amount not less than $500,000.00.

110.    Plaintiff requests punitive damages against Beverly Defendants for their willful or wanton conduct in reckless disregard for the safety of Mrs. Coggins and other residents and gross negligence in an amount not less than $3,750,000.00.

111.    Plaintiff requests any other actual, compensatory, consequential, incidental, and punitive damages to which she is entitled to recover under Mississippi law.

112.    Plaintiff requests attorneys' fees, costs, expenses, pre-judgment and post-judgment interest allowed by law.

113.    Plaintiff requests other relief deemed appropriate by the Court.

This the 16th day of November, 2005.

Respectfully Submitted,

RITA BENNETT, In Her Representative
Capacity as Guardian of BETTY COGGINS

By Her Attorneys:

JOHN D. GIDDENS
MS Bar No.9357

Philip W. Thomas, Esq.
PHILIP W. THOMAS, P.A.
747 North Congress Street
Jackson, Mississippi 39202
Post Office Box 24464
Jackson, Mississippi 39225-4464
Tel: (601) 714-5660
Fax: (601) 714-5659

Pieter Teeuwissen, Esq.
PIETER TEEUWISSEN, ESQ., PLLC
Post Office Box 16787
Jackson, Mississippi 39236
Tel:  (601) 420-1188
Fax: (601) 982-0190

John D. Giddens, Esq.
GIDDENS LAW FIRM
226 North President Street
Jackson, Mississippi 39236
Post Office Box 22546
Jackson, Mississippi 39225-2546
Tel: (601) 355-2022
Fax: (601) 355-0012